IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO- WESTERN DIVISION
CINCINNATI, OHIO

LISA M. BRADY
7342 RED OAK COURT
MASON, OHIO 45040

PLAINTIFF

-VS-

DAVITA, INCORPORATED
2000 SIXTEENTH STREET
DENVER, COLORADO 80202

DEFENDANT

CASE NO. 1:20-cv-910

JUDGE MICHAEL R. BARRETT

**CIVIL RIGHTS COMPLAINT
WITH JURY DEMAND**

Now comes the Plaintiff, Lisa M. Brady, by counsel to file the following Complaint against the Defendant as follows:

### I. FACTUAL SITTING

The Plaintiff, Lisa M. Brady, a Black, African-American female, is a registered nurse that was hired by the Defendant, Davita, to work at various hospitals in the greater Cincinnati, Ohio area. It was her duty to provided services for patients who received homodialysis treatment. The Plaintiff has in excess of twenty (20) years experience in her field of expertise.

In December 2017 and January 2018, the Plaintiff had openly sought a transfer from her "traveling" homodialysis duties to the stationary chronic care unit position. Her desire to transfer and the apparent receptiveness to her request by the manager of the chronic care unit at the Silverton, Ohio location were discussed with her immediate supervisor, Stephanie Kline. Anyone seeking an internal transfer in employment position was required to inform their

1

supervisor of the desired transfer. The Plaintiff informed her supervisor Stephanie Kline of her desire to transfer even though it was known that Davita did not support transfers or promotions requested by Black employees in the Cincinnati area. Additionally, Davita did not permit transfers to different departments if an employee had any "disciplinary" actions. At the time the transfer by the Plaintiff was discussed, she had not had any disciplinary incidents of any kind. In fact, the manger at the Silverton location was discussing with the Plaintiff what shift she would be interested in working. It was apparent that supervisor Stephanie Kline did not want the Plaintiff to transfer because of the Plaintiff's excellent working habits and skills. The Plaintiff had and has a very strong work ethnic and always reported to work.

On or about February 3, 2018, while the Plaintiff was working at the Bethesda North Hospital in Montgomery, Ohio, she received a telephone call, at approximately 8:00 A.M. that another patient, who needed assistance, had been admitted at the Bethesda Butler Hospital. She subsequently contacted fellow employees, Stephanie Kline and Lisa Johnson, about the matter. Lisa Johnson informed the Plaintiff that since one of Johnson's patients had died, she, Lisa Johnson, would provide services to the Bethesda Butler Hospital patient.

Hours later, at approximately 7:00 P.M., the Plaintiff received an inquiry as to when a nurse would be at Bethesda Butler Hospital to assist the patient there. The Plaintiff again called Lisa Johnson, who had stated much earlier that she would provide services to the patient at Bethesda Butler Hospital. The Plaintiff could not reach Lisa Johnson by telephone, but it was clear that Lisa Johnson had failed to report to assist the patient that she stated she would assist. After multiple attempts to contact Lisa Johnson had all failed, the Plaintiff decided to attempt to go to Bethesda Butler Hospital herself despite the fact that she had worked two (2) full shifts at

Bethesda North Hospital.

While she was in route to Bethesda Butler Hospital, the Plaintiff became ill and experienced extreme dizziness. She stopped her vehicle and telephoned both Stephanie Kline and Lisa Johnson about the situation. She only received their voicemail recordings for both Kline and Johnson. Immediately thereafter, she sent text messages to both Kline and Johnson stating that she would not be able to provide services to the patient at Bethesda Butler Hospital. She also sent a message to Dr. Manavalan to let him know that she would not be able to provide service to the patient.

The very next day, February 4, 2018, the Plaintiff was accused of abandoning a patient and told that she was terminated. Later, the Plaintiff was also informed that she was removed from the message pool, which is how her work assignment was given to her. Shortly thereafter, the termination of the Plaintiff was shared with her fellow coworkers by Stephanie Kline in a manner that was so demeaning and defaming to the Plaintiff, that she was contacted by several of her fellow coworkers. The actions taken by Stephanie Kline were in open violation of the policies and procedures of Davita.

The Plaintiff contacted teammate support to report the wrongful termination and the acts of defamation by Stephanie Kline because the Plaintiff was startled by this unfair treatment. She had never been written up or otherwise disciplined before.

The Plaintiff informed Stephanie Kline that she wanted to resolve the allegation and issues with team mate support. She also wanted to know why she was disciplined and why nothing was being done to nurse Lisa Johnson, who was suppose to go the Bethesda Butler Hospital to assist the patient, but failed to go to the job assignment. No disciplinary acts were

taken against Lisa Johnson at all.

It should be noted that both Stephanie Kline and Lisa Johnson are Caucasian females who frequently avoid work assignments by either leaving early or by just not answering their request for service telephone calls. Davita rarely, if ever, disciplines Caucasian nurses who fail to take or complete their assignments by leaving early or failing to accept telephone calls for pick-up services. It is the Black, African- American nurses that are treated differently with disciplinary proceedings and/ or threats of termination for even minor work infractions. Disparity in treatment based upon race is a common and reoccurring practice with Davita.

On February 12, 2018, the Plaintiff received a telephone call from team mate support informing her that she was scheduled to work because she was not terminated, but just given a verbal warning. No explanation was offered for the "flip flop" actions of Stephanie Kline who did not want the Plaintiff to transfer out of her supervision. The orchestrated "disciplinary action" was just the action that prevented the Plaintiff's transfer to the Silverton chronic care unit. The Plaintiff recognized the "set up" and refused to subject herself to any further mistreatment. She was afraid that she could be accused of anything and that her livelihood which was already jeopardized by her supervisor Stephanie Kline's behavior, would be damaged even more. The entire situation caused the Plaintiff extreme emotional distress. To help her cope with the Defendant's wrongful actions, the Plaintiff sought professional care and received prescribed medication to help her overcome the wrongful and discriminatory treatment.

The Plaintiff filed a timely complaint with the U.S. Equal Employment Opportunity Commission. After a brief investigation, the Plaintiff was issued a Notice of Suit Rights letter on or about July 25, 2018. She received it by ordinary mail approximately three (3) days after the

July 25, 2018 designated mailing date.

This action is being instituted for the racially motivated discriminatory unlawful employment practices and unlawful disparity in treatment by the Defendant toward the Plaintiff. Additionally, the complaint seeks civil damages from the Defendant for the intentional infliction of emotional distress and defamation of character suffered by the Plaintiff. The Defendant's discriminatory employment practices are also in violation of the laws of the State of Ohio.

## II. JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 42 U.S.C.A. Sections 1991 and 2000e, (hereinafter called Section 1981 and Title VII respectively), seeking a remedy for race discrimination, national origin discrimination and retaliation, all of which occurred in Cincinnati, Ohio and the surrounding communities.

2. The Court has jurisdiction over Title VII and Section 1981 claims under 28 U.S.C.A. Section 1331.

3. Venue lies in this District under 28 U.S.C.A. Section 1391(b).

## PARTIES

4. The Plaintiff is a former employee of the Defendant, whose natural origin is African-American and whose race is Black in the sense in which race is used in 42 U.S.C.A. Section 1981.

5. The Defendant, Davita, Incorporated, doing business as Davita, is incorporated under the laws of the State of Colorado, doing business in Cincinnati, Hamilton County, Ohio and surrounding counties where it provides medical homodialysis treatment to patients. The Defendant has more than Five (500) Hundred employees.

5

## CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991

6. The Plaintiff worked for the Defendant in the State of Ohio as a registered nurse until she was terminated on February 4, 2018.

7. Before that date, the Plaintiff had opposed employment practices that she reasonably believed to be discriminatory against her because of her national origin and race by her immediate supervisor as to working conditions and assignments scheduled for the Plaintiff as opposed to her Caucasian counterparts. She had actively sought a transfer out of the position she was working and specially informed her immediate supervisor Stephanie Kline of the same as was required by company policy. Transfers to different positions within the Defendant's operations are not permitted if any "disciplinary action" has been taken against the employee seeking the transfer.

8. On or about February 3, 2018, while the Plaintiff was working at the Bethesda North Hospital in Montgomery, Ohio, she received a telephone call, at approximately 8:00 A.M. that another patient, who needed assistance, had been admitted at the Bethesda Butler Hospital. The Plaintiff subsequently contacted fellow employees, her immediate supervisor Stephanie Kline and nurse Lisa Johnson, about the matter. Lisa Johnson informed the Plaintiff that since one of Johnson's patients had died, she, Lisa Johnson, would provide services to the Bethesda Butler Hospital patient.

9. Hours later, at approximately 7:00 P.M., the Plaintiff received an inquiry as to when a nurse would be at Bethesda Butler Hospital to assist the patient there. The Plaintiff again called Lisa Johnson, who had stated much earlier that she would provide services to the patient at

6

Bethesda Butler Hospital. The Plaintiff could not reach Lisa Johnson by telephone, but it was clear that Lisa Johnson had failed to report to assist the patient that she stated she would assist. After multiple attempts to contact Lisa Johnson had all failed, the Plaintiff decided to attempt to go to Bethesda Butler Hospital herself despite the fact that she had worked two (2) full shifts at Bethesda North Hospital.

10. While she was on route to Bethesda Butler Hospital, the Plaintiff became ill and experienced extreme dizziness. She stopped her vehicle and telephoned both Stephanie Kline and Lisa Johnson about the situation. She only received their voicemail recordings for both Kline and Johnson. Immediately thereafter, she sent text messages to both Kline and Johnson stating that she would not be able to provide services to the patient at Bethesda Butler Hospital. She also sent a message to Dr. Manavalan to let him know that she would not be able to provide service to the patient.

11. On February 4, 2018, the Plaintiff was accused of abandoning a patient by Stephanie Kline, her immediate supervisor, and was told by Stephanie Kline that she was terminated. As an active feature of the termination, the Plaintiff was informed that she was removed from the message pool, which is how her work assignments were given to her.

12. The termination of the Plaintiff was shared with her fellow coworkers by her immediate supervisor Stephanie Kline in a manner that was so demeaning and defaming to the Plaintiff that she was contacted by several of her fellow coworkers regarding the same.

13. After her termination was announced and her character defamed, the Plaintiff was informed by her immediate supervisor, Stephanie Kline, that she was not terminated, but only given a verbal warning. Any such discipline action prevented the Plaintiff from transferring out

of the supervision of Stephanie Kline into a different position.

14. To Plaintiff's knowledge, no disciplinary action of any kind was taken against Lisa Johnson, the Caucasian nurse who did not provide medical assistance to the patient as Bethesda Butler Hospital even after she stated that she would.

15. The actions taken by the Plaintiff's supervisor Stephanie Kline were deliberate and with forethought to punish and discriminate against the Plaintiff and were done with callous indifference to the Plaintiff's federally protected rights.

16. The actions complained of in Paragraphs 11, 12 and 13 above have caused the Plaintiff to lose wages, incur expenses, and to suffer mentally and physically form anger, humiliation frustration, suspicion and fear.

17. The Plaintiff filed charges against the Defendant with the Equal Employment Opportunities Commission and that agency issued the Plaintiff a Notice of Right to Sue.

18. All jurisdictional prerequisites to the institution of a suite under Title VII have been fulfilled.

19. The actions complained of in Paragraphs 11, 12 and 13 above have caused the Plaintiff to lose wages, benefits, employment opportunities and to incur expenses including attorney fees.

## 42 U.S.C.A. SECTION 1981 CLAIM

20. The Plaintiff incorporates by reference Paragraphs 1 through 19 of this Complaint as if the same were fully rewritten herein.

21. The Caucasian nurses were not subjected to the same treatment as the Plaintiff for their failure to report for work assignments.

8

22. No Caucasian nurses were ever disciplined for being ill while on a job assignment, scheduled or otherwise.

23. The actions of the Defendant against the Plaintiff were racially motivated because the Plaintiff is Black.

## STATE OF OHIO UNLAWFUL DISCRIMINATORY PRACTICES CLAIM

24. The Plaintiff incorporates by reference Paragraphs 1 through 23 of this Complaint as if the same were fully rewritten herein.

25. The actions of the Defendant are in violation of laws of the State of Ohio

26. Ohio Revised Code Section 4112.02 prohibits unlawful discriminatory practices.

**WHEREFORE**, the Plaintiff prays that the Court finds that

(1) The actions of the Defendant were discriminatory and order that all such actions cease;

(2) Order the Defendant to make the Plaintiff whole by awarding the Plaintiff all lost pay and benefits, removing derogatory material from the Plaintiff's personnel records and publishing in the work place notice of the unlawful motivations for the actions taken against the Plaintiff;

(3) Enter judgment for the Plaintiff in the amount of compensatory damages at One Hundred Thousand ($100,000.00) Dollars;

(4) Enter judgment for the Plaintiff in the amount of punitive of Three Hundred Thousand ($300,000.00) Dollars

(5) Award the Plaintiff attorney fees and the costs and expenses of this action and related administrative proceedings;

(6) Grant the Plaintiff such other and additional relief as the court deems just.

9

## JURY DEMAND

A trial by jury is hereby demanded on all matters triable by the same.

Respectfully Submitted

*/s/ William D. Bell, Sr.*
William D. Bell, Sr., (0027596)
Attorney for the Plaintiff
2368 Victory Parkway, Suite 110
Cincinnati, Ohio 45206
Telephone No. (513) 241-2355
Facsimile No. (513) 241-3091
Email: williamdbellsratty@fuse.net